IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

---

UNITED STATES OF AMERICA,

    Plaintiff,

  -vs-                                  Criminal Docket
                                        No. 15-15-BLG-SPW

WILLIAM MAURICE SMITH,        Court of Appeals
                                        No. 16-30210

    Defendant.

---

TRANSCRIPT OF SENTENCING PROCEEDINGS

Heard in Snowy Mountains Courtroom
James F. Battin United States Courthouse
2601 Second Avenue North
Billings, Montana
September 1, 2016
9:32 a.m.

BEFORE THE HONORABLE SUSAN P. WATTERS

UNITED STATES DISTRICT JUDGE

TINA C. BRILZ, RPR, FCRR
Official Court Reporter
United States District Court
James F. Battin United States Courthouse
2601 Second Avenue North, Room 4209
Billings, Montana  59101

Proceedings recorded by mechanical stenography, transcript produced by computer.

# A P P E A R A N C E S :

PRESENT ON BEHALF OF THE PLAINTIFF, THE UNITED STATES OF AMERICA:

    MS. LORI A. HARPER SUEK
    Assistant U.S. Attorney
    OFFICE OF THE U.S. ATTORNEY
    2601 2nd Avenue North, Suite 3200
    Billings, Montana  59101

PRESENT ON BEHALF OF THE DEFENDANT, WILLIAM MAURICE SMITH:

    MR. LARRY JENT
    Attorney at Law
    WILLIAMS, JENT & DOCKINS
    506 East Babcock Street
    Bozeman, Montana  59715

```
 1  The following proceedings were had:
 2
 3              THE COURT:  Please be seated.
 4      Amanda, would you please call the first matter on the
 5  calendar.
 6              CLERK OF COURT:  Yes, Your Honor.
 7      The court has set aside this time to hear the matter of
 8  CR-15-15-BLG-SPW, USA versus William Maurice Smith.  This is
 9  the time set for a sentencing.
10              THE COURT:  For the record, Lori Suek appears on
11  behalf of the government.  Larry Jent appears on behalf of the
12  defendant.  And the defendant is present.
13      And I have received the presentence investigation report
14  and reviewed that report.  Ms. Suek, have you received and
15  reviewed that report?
16              MS. SUEK:  Yes, Your Honor.
17              THE COURT:  Do you have any objections to the report?
18              MS. SUEK:  No, Your Honor.
19              THE COURT:  And Mr. Jent, did you receive and review
20  the presentence report?
21              MR. JENT:  I did, Your Honor.  And objections have
22  been noted by the presentence officer in the addendum, which
23  you should have.
24              THE COURT:  Right.  And you had an opportunity to go
25  through that report with Mr. Smith; correct?
```

1    MR. JENT: Yes, I did, briefly, Your Honor.

2    THE COURT: So, with regard to the objections set
3 forth in the addendum to the presentence report, Mr. Smith
4 objects to paragraphs 8, 118, 121, and asserts that a sentence
5 -- mandatory sentence of life imprisonment is cruel and unusual
6 punishment. And so, he also objects to paragraph 22 with
7 regard to the facts set forth in that paragraph. And, of
8 course, his objection to paragraph 22 does not affect the
9 guideline calculation or the statutory sentencing parameters.
10 And so it's noted for the record, but doesn't require a ruling
11 by the court.

12    MR. JENT: No, Your Honor, it does not require a
13 ruling, because sentence under the statute, under 21 U.S.C.
14 851, is preordained.

15    THE COURT: Right.

16    So, those are noted for the record. And will accompany
17 the presentence report. But as I said, don't require a ruling
18 by the court this morning.

19    MR. JENT: Your Honor, could I mention one thing on
20 the life without parole. And I realize, you know, the bounds
21 of zealous advocacy require me, I believe, to make the
22 objections; note that the law is against us and the good faith
23 rationale for making the objection is the reason contained in
24 the Law Review article I found.

25    THE COURT: Okay.

1   Well, and to the extent of that, for purposes of the
2   record, if you want to take that issue up on appeal or if
3   Mr. Smith wants to take that issue up on appeal, your objection
4   is overruled.
5       MR. JENT:  Yes, Your Honor.  Thank you.
6       THE DEFENDANT:  Ma'am, am I entitled to say anything?
7       THE COURT:  In a moment, uhm-hum.
8       THE DEFENDANT:  All right.
9       THE COURT:  So, I'll adopt the presentence report as
10  written for purposes of calculating the guideline -- the
11  advisory guideline sentence.
12      And before we go any further, I -- I did receive from
13  Mr. Smith yesterday, a motion to terminate counsel of record.
14  And I've reviewed that motion and the arguments set forth in
15  the attachment to the motion with regard to Mr. Smith's
16  position about why he should be granted new counsel at this
17  point.
18      And the gist of the motion, as I understand it, is that
19  Mr. Smith is requesting that the court grant him -- appoint new
20  counsel, remove Mr. Jent and appoint new counsel, so that new
21  counsel can file a motion for a new trial based on ineffective
22  assistance of counsel.
23      And then, Mr. Smith has set forth, as I stated, numerous
24  other bases for wanting new counsel.  Not only with regard to
25  Mr. Jent's representation, but one of his prior attorneys,

Mr. Pardy. And basically, he lists numerous arguments in support of his claim that his counsel has been ineffective.

With regard to the discussion of the motion for a new trial, that would be governed by Rule 33 of the Federal Rules of Criminal Procedure. And a motion for a new trial pursuant to that rule and Subsection (b)(2), because it's not made on the grounds of newly discovered evidence, that rule says that that motion must be filed within 14 days after a guilty verdict is received.

And so, the deadline for a motion for a new trial before this court was May 13th of this year. So even if the court were to grant your motion to terminate Mr. Jent for the reason that then a new attorney could file a motion for a new trial, the new attorney would have no standing to file a new trial, or basically, the time has run. And once that time has run, the court loses jurisdiction over that motion.

So, there is nothing to be gained by the court granting your motion to terminate Mr. Jent today in order for a different attorney to file a motion for new trial, because that deadline has passed, and he would -- he or she would not have the option of filing a motion for a new trial before this court.

I know that, Mr. Smith, you filed a couple notices of appeal after your conviction by jury. However, as I stated in my order, first of all, you were represented by counsel, and so

1  I wasn't going to accept pro se motions, but more importantly,
2  the case was not ripe for appeal.  Once I sentence you today,
3  then a notice of appeal will be ripe, and you can file your
4  notice of appeal.  And you can appeal your conviction, your
5  sentence, your -- my ruling on your suppression motion, you can
6  bring up ineffective assistance of counsel, all of those
7  arguments can be made to the Ninth Circuit.
8      Now, with regard to the bases for your position that your
9  counsel has been ineffective, many of those will probably not
10 be able to be resolved by the Ninth Circuit, because they
11 aren't record-based complaints.  They're things that occurred
12 that would not be reflected in the record, and so when the
13 Ninth Circuit reviewed the transcript, for example, they
14 wouldn't -- the court wouldn't have any way to determine
15 whether or not your counsel was ineffective.
16     But that doesn't mean that you don't have an avenue to
17 address that, Mr. Smith.  And that would be through a 2255
18 motion, which we call a collateral attack on the sentence,
19 which doesn't necessarily mean anything to you.  But after
20 sentencing, and once, if you intend to appeal, once your appeal
21 is resolved, then you have the opportunity to file a 2255
22 motion setting forth all of the bases for your concerns about
23 your representation and any other matters that you wished the
24 court -- and that would be before me -- that you wished this
25 court to rule on.

So, your -- the fact that I'm going to deny your motion to terminate counsel today, really has no, in my view, very little prejudice to you, in that, for example, your complaint about Mr. Pardy, that he did not present the government's original plea agreement to you in a timely fashion, if you had accepted the government's original plea agreement where -- at least you tell me, they were offering you a sentence of five to 40 years, I would be mandated to have sentenced you to five years, so you'd still be incarcerated. So it isn't like if I granted your motion to terminate counsel today, you would be released. It isn't like if you had accepted the government's plea agreement or had the opportunity to accept the government's plea agreement offer, that you would be out of custody, because you'd be serving the minimum five years, and perhaps more time than that given your record and the circumstances of the offense.

So, as far as your continued incarceration, in my view, there isn't any prejudice to you, because you wouldn't be out anyway.

So you have a number of avenues to address the issues that you have discussed in your motion to terminate counsel of record; both avenues, a Ninth Circuit appeal, and a 2255 motion, I've tried to explain to you today.

And if you file a notice of appeal, then Mr. Jent, I assume, will withdraw.

         MR. JENT:  Yes.  I'll file a notice of appeal, Your Honor, and then file a motion to withdraw at the same time.
         THE COURT:  Right.
     And then other counsel can be appointed to represent you. And I think maybe the Ninth Circuit would be the one appointing counsel at that point in time, because once the notice of appeal is filed, I lose jurisdiction.  But you'll get different counsel to help you with your appeal.  When you file your 2255 motion, if it has merit, counsel will be appointed to assist you in that motion.
     So, for those reasons, the motion to terminate counsel of record that you filed is denied.
     So, I will summarize the applicable punishments for the offense under the United States Sentencing Guidelines and the applicable statute, recognizing that the court really has no jurisdiction -- or no discretion -- pardon me -- as to what the sentence in this case has to be.
     With regard to the advisory sentencing guidelines, the adjusted offense level is 36.  However, with the Chapter 4 enhancement for the reason that Mr. Smith is a career offender, pursuant to United States Sentencing Guideline 4B1.1, Sub (b)(1), the total offense level is 37, because the maximum statutory punishment is life.
     Mr. Smith has 11 criminal history points, so his criminal history category is V.  Except, again, because he is designated

1  a career offender, his criminal history category is VI.  Again,
2  under Sentencing Guideline 4B1.1.
3       The advisory guideline range is 360 months to life
4  imprisonment, except pursuant to 21 United States Code Section
5  846 and 21 United States Code Section 841(b)(a) -- capital (A),
6  and the government's notice pursuant to 21 United States Code
7  Section 851, the defendant faces a mandatory sentence of life
8  imprisonment, so the guideline is life.
9       Under the guidelines, Mr. Smith is not eligible for
10 probation.  He is subject to ten years of supervised release on
11 Counts One and Two and two to five years on Count Three, a fine
12 of 20,000 to $20 million, and a special assessment of $300.
13      And restitution is not applicable under the guidelines.
14      For the charge in Count One of conspiracy to distribute
15 methamphetamine, in violation of 21 United States Code Section
16 846, and Count Two, possession with intent to distribute
17 methamphetamine, in violation of 21 United States Code Section
18 841(a)(1), the mandatory punishment in this case is life
19 imprisonment without release.
20      There is a maximum fine of $20 million, ten years to life
21 of supervised release, and the $100 special assessment.
22      For the charge of possession of a firearm in furtherance
23 of a drug-trafficking crime, in Count Three of the indictment,
24 in violation of 18 United States Code Section 924(c)(1)(A), the
25 minimum punishment is five years' imprisonment and the maximum

 1  punishment is life imprisonment to run consecutive to all other
 2  counts; five years of supervised release, a $250,000 fine, and
 3  the $100 special assessment.
 4          Under the statute, Mr. Smith is not eligible for
 5  probation.  And again, restitution is not applicable.
 6          Ms. Suek, do you agree that's an accurate statement of the
 7  statutory and guideline provisions?
 8                  MS. SUEK:  Yes, Your Honor.
 9                  THE COURT:  Do you also agree, Mr. Jent?
10                  MR. JENT:  Yes, Your Honor.
11                  THE COURT:  Ms. Suek, do you wish to be heard with
12  regard to sentencing?
13                  MS. SUEK:  Yes, Your Honor.
14          This is a case that certainly doesn't give the government
15  any pleasure.  But it is certainly something that is warranted
16  and deserved by Mr. Smith.
17          He, obviously, as the court has alluded to, had other
18  options, but this was the option that he chose.  And given his
19  criminal history and given his conduct in this case, the
20  statute mandates this sentence for a reason.  That reason is
21  that Mr. Smith is a dangerous career criminal who has spent his
22  life distributing drugs, particularly methamphetamine,
23  throughout our community.
24          His conduct in this case was no different than the conduct
25  that he has engaged in throughout his life, given the repeated

drug offenses, felony drug offenses that he's been convicted of.

Unfortunately, there is just a time when the statute, when Congress, and when the United States just calls the game. And with respect to Mr. Smith, that time has come today. And we ask the court to impose the sentence that's mandated, which is life.

THE COURT: Mr. Jent.

MR. JENT: Your Honor, the sentence being preordained by statute, I have nothing further.

THE COURT: Mr. Smith, you have an opportunity to address the court if you wish to speak. Please stand; use the microphone.

THE DEFENDANT: Yes.

Your Honor, I didn't even get a chance to review the PSR report with Mr. Jent. And I was hoping that maybe we could just continue the sentencing and let me review the PSR report, so I can make my own objections. I didn't get to make any objections. The objections that were made were Mr. Jent's objections. I didn't get even a chance to review the PSR.

And I would just like to address a few things here.

My attorney, he's never even once ever answered his phone for me. Never called my witnesses to testify for me. Never let me testify on my own behalf. And never listened to my side of the story. And so I ask that the court to please grant a

continuance so I can attest my innocence.

With counsel, he wasn't willing to even investigate and look into the facts weighing in my favor.

I thought legally that I was entitled to at least seven days to review my PSR report. And be furnished with a copy of it, which I wasn't.

I do know that -- I mean -- I thought it would be a conflict of interest that Mr. Jent is also campaigning for Attorney General, too. So how could his mindset possibly have given me a fair chance in this matter?

I feel like I was unfairly tried. And I feel like the counsel, his best interests didn't lie with me, the defendant.

He also withheld, like, key evidence in this case from me, to even -- to be able to get a defense.

I feel there has been a gross injustice here. And I would like a little time to set things straight.

Prior to trial, the fact that there was no communication from counsel and myself, I think it was inexcusable. And when he finally showed two days before trial, I asked him to go ahead and take the plea offer, and he told me: "No. We're going to trial."

And the man wasn't -- he was nowhere ready.

I don't know, I just -- and I beg that you don't go with the government's stand here. And I just -- I throw myself at the mercy of the court, ma'am. Thank you.

THE COURT: Okay.

Mr. Jent, did you provide Mr. Smith a copy of the presentence report?

MR. JENT: I did not copy the presentence report for him, Your Honor, because we're not supposed to copy them. And I went into the jail yesterday to discuss it with him. I didn't go to Shelby, because it's getting so hard when you go to Shelby, and particularly in this case, where there's really nothing to it. I went to Shelby one time with the presentence officer, and we did the interview, and I discussed with Mr. Smith, as did the presentence officer, that the result had to be life without parole, because of the statute.

I went in to see him last night and explained that again. And went through the report with him briefly. And explained what was in it. Read certain portions. But I didn't copy it because the instructions we have are: "Do not copy. Do not distribute." That's why -- and so I don't do that.

As far as the discovery, he's talking about the same thing. I discussed discovery with him pretty endlessly. I went a couple of trips to Basin. And also, I called back to Basin, and the Basin people were kind enough to get Mr. Smith to the phone when I needed him.

On the other hand, contact with clients at Shelby remains, and I've made this objection before this honorable court, very difficult and burdensome. You're limited -- if you're lucky,

sometimes you get 40, 45 minutes, and you can squeeze another 15 minutes out. So I didn't see any reason in a result where we knew what the result would be to spend -- and I'm closer than Billings lawyers. It's still over five hours for me to get there, and it's really a two-day trip. I've done it a couple times in a day, which I don't recommend. So I decided to wait till he got down here.

I called Federal Defenders earlier in the week to try to find out where Mr. Smith was, and they couldn't give me an answer. They thought he was still in Shelby, so I waited till yesterday to come down. And that's when I discussed it.

But this is a case where the presentence report, as the court noticed in the objections, really, there's nothing for the court to decide in this case.

We did take some time, though, when Toni and I went up there, and this is important, I think, to hear, Your Honor, for sentencing and disposition, when you look at the medical things that are on the report, there's a significant medical history. I hope you will assign Mr. Smith to a facility -- and probation knows all about these things -- where he might get the type of both mental and physical health treatment he needs. And we spent some time to presentence -- not only going through that, but she got the records. And you'll see she got the records from St. V's and other places around town, so I think that might be helpful if you'd consider that.

And other than that, I would simply refer the court to the record of the trial.

THE COURT: Okay.

Well, your concerns are noted, Mr. Smith. But your request for a continuance is denied today.

That's kind of been the history of your case, Mr. Smith. You know, how many times we've got to court for the suppression hearing, and you decided that day that counsel was ineffective and we continued that multiple times. Mr. Jent is your fourth attorney. We had seven trial settings because of your concerns with regard to counsel. So we're going to proceed today.

The court has really no discretion with regard to the sentence that it must impose today on Counts One and Two. Congress has determined that in the circumstances of a career offender such as yourself, Mr. Smith, and your criminal history and the circumstances of this offense, that a life sentence without any possibility of release is appropriate.

And apparently, Congress has determined that that sentence reflects the seriousness of the crime, should promote respect in the law, if not for you, for others, to provide a just punishment for the offense, will deter criminal conduct by you, certainly, perhaps by others. Will, obviously, protect the public from any future crime by you. And you will have the opportunity to participate in some programming. You've requested the R-DAP program for purposes of your

1 rehabilitation.

2 I presided over the trial. There was more than sufficient
3 evidence for the jury to determine beyond a reasonable doubt
4 that you are guilty of these crimes of which you have been
5 charged and convicted. The sentence mandated by Congress is
6 such, because of your repeated criminal conduct. I mean, the
7 statute, the 851 statute, contemplates this kind of a sentence
8 for someone who has had two prior felony drug convictions or
9 violent crime convictions.

10 And I would note, based on the information that the
11 government filed pursuant to 21 United States Code Section 851,
12 that you have had six prior felony drug convictions.

13 And that notice was filed on March 28th, 2016, prior to
14 trial, and no response was filed by you. And there isn't any
15 reason for the court to believe that the convictions set forth
16 in that information are not correct.

17 THE DEFENDANT: Ma'am --

18 THE COURT: You had a difficult childhood. There's
19 no doubt about that. And lived on the streets at a pretty
20 early age, unfortunately. You then adopted that street
21 lifestyle, and as Ms. Suek has said, that you have pretty much
22 spent your life distributing drugs in the Billings community
23 and engaging in criminal conduct.

24 And apparently, as I said, Congress has determined that an
25 individual such as yourself, at some point in time, should be

removed from society, and society permanently protected from you.

And so that is the reason for the mandated life sentence.

So, of course, as I stated, it will accomplish the purposes of sentencing. There is no need for the court to go through any supervised release terms, as that would be moot.

And with regard to the presentence report, of course, it's informative to the court and counsel, but in this kind of a situation where the factors set forth in the presentence report otherwise might be important, in this situation, given that the court's got no discretion, the presentence report is not that important as far as sentencing. It will be useful for the Bureau of Prisons to determine a facility that will be most suitable for you, Mr. Smith, given your PTSD issues and your health issues related to the shooting years ago.

And so, it will help the Bureau of Prisons to determine what is an appropriate placement for you.

So, having considered all of the information and the evidence presented at trial, including the presentence report here today, it is the judgment of the court that you be committed to the custody of the United States Bureau of Prisons for a term of life on Counts One and Two, and for a term of five years' imprisonment on Count Three, to run consecutively to Counts One and Two.

It is recommended that you participate in the R-DAP

program, if eligible, and any mental health program or vocational program, if eligible.

I find that you do not have the ability to pay a fine. And I hereby waive the fine.

You are, however, ordered to pay to the United States a special assessment of $100 per count of conviction for a total of $300, which shall be due immediately.

During the period of your incarceration, you are ordered to pay criminal monetary penalty payments at the rate of not less than $25 per quarter. Those payments shall be made through the Bureau of Prisons' Inmate Financial Responsibility Program to the clerk of this court.

And I would note that there has been a preliminary forfeiture order entered on August 11th, 2016. And I would assume that a final order of forfeiture will be requested once the time has run.

MS. SUEK: That is correct, Your Honor.

THE COURT: Okay.

So, any legal objection to the sentence with regard -- or Ms. Suek?

MS. SUEK: No, Your Honor.

THE COURT: Any legal objection, Mr. Jent?

MR. JENT: No, Your Honor.

THE COURT: Mr. Smith, you, as I indicated before, have the right to appeal my ruling on your suppression motion,

your convictions at trial, this sentence, you have a right to bring up your concerns with regard to ineffective assistance in your appeal. And then once that appeal is resolved, then if all of your issues have not been dealt with, you will have the right to file a 2255 motion to this court with regard to any concerns that you have.

So, notice of appeal will have to be filed within 14 days of today's date, which Mr. Jent knows. And he's indicated to the court that he will file a notice of appeal on your behalf, Mr. Smith.

So, you are remanded to the custody of the United States Marshals to carry out the judgment of the court.

And we're adjourned.

(The proceedings in this matter were adjourned at 10:03 a.m.)

C E R T I F I C A T E

**I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.**

**/s/ Tina C. Brilz, RPR, FCRR**

**Dated this 6th day of December, 2016.**